IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CORINTHIAN J. SUBLETT,<br>　　Plaintiff | )<br>)<br>) | Case No. 7:19-CV-391 |
| v. | )<br>) | |
| HAPPY SMITH, M.D., <u>et al.</u>,<br>　　Defendants | )<br>) | By: Hon. Michael F. Urbanski<br>Chief United States District Judge |

## MEMORANDUM OPINION

Corinthian Sublett, a Virginia inmate proceeding pro se, filed a complaint pursuant to 42 U.S.C. § 1983, alleging that defendants Happy Smith, M.D., Benny Mullins, M.D., nurse Tina Townsend, warden Carl Mannis, and Virginia Department of Corrections (VDOC) Director of Health Services Mark Amonette, M.D., violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment by medical deprivation.[1] Defendants Dr. Smith and Dr. Mullins filed a motion for summary judgment on October 9, 2019, to which Sublett responded on October 18, 2019. ECF Nos. 31 and 40. Defendants Townsend, Mannis, and Amonette filed a motion to dismiss for failure to state a claim on October 11, 2019, to which Sublett responded on October 25, 2019. ECF Nos. 37 and 42. For the reasons established below, both the motion for summary judgment and the motion to dismiss are **GRANTED** and Sublett's complaint is **DISMISSED**.

---

[1] Sublett also sought declaratory judgment under Federal Rule of Civil Procedure 57, "which gives federal courts clear authority to declare the rights of parties without granting 'coercive' relief such as money damages or an injunction." As the court grants defendants' motions to dismiss and for summary judgment, Sublett's Rule 57 request is **DENIED**.

**I. Background**

Sublett is incarcerated at Wallens Ridge State Prison (WRSP). Sublett first felt pain in his lower back in early November 2016. He immediately requested a doctor's appointment via WRSP's sick call program and was seen later that month by Dr. Smith. The day after the appointment, Dr. Smith ordered an X-ray of Sublett's back. In December 2016 he reviewed the results of the X-ray with Sublett and told Sublett his X-ray indicated "normal, genetically-inherited sacralization"[2] and prescribed ibuprofen for the pain.

In January 2017, Dr. Smith further explained sacralization and provided Sublett with a copy of his X-ray. In April 2017, Sublett had another appointment with Dr. Smith and explained that the ibuprofen was ineffective. Dr. Smith administered a cortisone injection to Sublett two days later. At a May 2017 appointment, Sublett said his pain persisted and Dr. Smith prescribed Tylenol. At subsequent appointments in November 2017 and March 2018, Sublett received Naproxen and Mobic, respectively, to treat his ongoing pain.

In July 2018, Sublett reviewed the copy of his X-ray report that had been provided to him in January 2017. Sublett claims he noticed an irregularity with his L5 vertebrae on the report and requested an appointment with the doctor. At his August 2018 appointment, Sublett told Dr. Smith that the Mobic was ineffective. Based on Sublett's review of the X-ray report, he requested a magnetic resonance imaging (MRI) scan be performed to understand the full extent of his injury. Instead, Dr. Smith requested a computerized tomography (CT) scan authorization from VDOC Office of Health Services.

---

[2] Sacralization is a congenital irregularity involving the fusion of vertebrae at the base of the spine to the sacrum bone. Sublett asserts none of his known family members suffered from this condition, causing him to believe Dr. Smith misdiagnosed him.

In September 2018, the CT scan was authorized and performed at Lonesome Pine Hospital in Big Stone Gap, Virginia. The next month, Dr. Smith reviewed the CT scan results with Sublett, telling him "there were 'only signs of arthritis' . . . and no other anomaly," and continuing the Naproxen prescription. See Am. Compl., ECF No. 29, at ¶22.

In November 2018, Sublett reviewed a copy of his CT scan while using a medical dictionary. According to Sublett, Quasim Ali Rao, M.D., the doctor who read the scan, noted a bulging disc and spinal stenosis, and advised considering an MRI for persistent or worsening symptoms. See Aff., ECF No. 1-3 at 3 and CT results, ECF No. 1-3 at 9. In the same month, Sublett had an appointment with defendant Dr. Mullins. Sublett told Dr. Mullins he continued to be in pain, and Dr. Mullins requested an MRI. Sublett believed this MRI request contained incomplete information as to the extent of his injury because it did not mention spinal stenosis. The MRI request was denied.

In December 2018, Sublett told Dr. Mullins that the pain in his leg and lower back was worsening. Sublett had requested an appointment after he felt a sharp pain surge through his lower back, causing him to fall backward and land on his back. In January 2019, Dr. Mullins ordered an updated X-ray and also prescribed a muscle rub. See Am. Compl., ECF No. 29, at ¶26. The X-ray was done at WRSP three days after this appointment and showed no abnormalities. ECF No. 1-3 at 4, 11.

On January 15, 2019, Sublett filed an informal complaint challenging the denial of the MRI. Defendant Townsend reviewed the informal grievance and on January 24, 2019 she placed Sublett on the "doctor's list" for an appointment to review his most recent X-ray. See ECF No. 1-2 at 1.

3

In February 2019, Dr. Mullins met with Sublett to discuss the latest X-ray, prescribed Tylenol and a muscle rub, and said everything "appeared to be completely normal." See Am. Compl., ECF No. 29, at ¶27. Sublett received a complete copy of his medical records three days later.

In the meantime, on January 29, 2019, Sublett filed a "Regular Grievance" asserting that he needed an MRI rather than an X-ray review. ECF No. 1-2 at 2. On February 20, 2019 Defendant Mannis responded to Sublett's grievance, telling him that he had been seen on February 4, 2019 by the facility physician who determined his plan of care. ECF No. 1-2 at 4.

On February 21, 2019, Sublett filed a Level II grievance, asserting that he continued to suffer back pain. Id. A response to the grievance was issued on March 14, 2019, stating that Sublett's physician would determine the course of his back treatment, including recommendations for an MRI of his back. The response noted that he had seen the physician on February 4, 2019 and had a follow-up appointment. Id. at 5. Sublett then filed this lawsuit on May 24, 2019.

Liberally construed,[3] Sublett's verified amended complaint alleges that defendants violated his Eighth Amendment rights by (i) intentionally failing to disclose the severity of his medical condition causing chronic back pain; (ii) refusing to authorize an MRI diagnostic test in order to minimize costs incurred by the Commonwealth; (iii) failing to recommend surgery and prescribing medication that did nothing to relieve his pain; and (iv) ordering a follow-up X-ray that showed no anomaly, in an attempt to cover up earlier evidence of a serious medical

---

[3] Sublett is proceeding pro se and, thus, entitled to a liberal construction of the pleading. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007).

4

condition. Sublett seeks (i) injunctive relief against defendant Amonette to compel an order for an MRI and any necessary corrective surgery to be performed to avoid further injury; (ii) compensatory damages in the amount of $55,000 jointly and severally against defendants Smith and Mullins; and (iii) punitive damages in the amount of $20,000 each against defendants Smith and Mullins, and $10,000 each against defendants Townsend and Mannis.[4]

In their motion for summary judgment, defendants Drs. Smith and Mullins argue that they did not act with deliberate indifferent toward Sublett's medical condition. In the motion to dismiss, defendants Townsend, Mannis, and Dr. Amonette argue that Sublett failed to establish a claim of deliberate indifference to his serious medical needs, they lack personal involvement in his medical treatment, and that because supervisory liability is generally inapplicable in § 1983 claims, there is no legal basis upon which to hold them responsible.

## II. Applicable Law

### A. Summary Judgment

Pursuant to Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with … [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc.,

---

[4] Sublett concedes that Dr. Amonette did not play a role in the alleged violation of his Eighth Amendment right to be free of cruel and unusual punishment. He appears to name Dr. Amonette as a defendant for the sole purpose of seeking an injunction ordering Dr. Amonette to provide the specific medical care he seeks.

5

477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)).

Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable

jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

### B. Liability under 42 U.S.C. § 1983.

To prevail on a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish that he has been deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States and that the conduct about which he complains was committed by a person acting under color of state law. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998). "Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under [§ 1983]." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting Bennett v. Gravelle, 323 F.Supp. 203, 214 (D.Md. 1971); See also Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658 (1978).

Plaintiffs may seek money damages against defendants for their official actions when they are sued in their individual capacities, subject to some exceptions and immunities. Hafer v. Melo, 502 U.S. 21, 30-31 (2001). In contrast, claims for money damages brought against defendants in their official capacities are not cognizable in § 1983 lawsuits because neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, a claim brought against a

defendant in his or her official capacity is not considered a suit against the official, but rather a suit against the official's office. Because the Eleventh Amendment prohibits courts from entertaining an action against the state, Alabama v. Pugh, 438 U.S. 781, 782 (1978), it also prohibits courts from considering claims for damages against defendants in their official capacities. Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996). Therefore, to the extent Sublett seeks compensatory and punitive damages against any defendants in their official capacities, his claims are **DISMISSED**.

However, a plaintiff may seek prospective injunctive relief against state defendants in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); Graham v. Kentucky, 473 U.S. 159, 167 n. 14 (1985). "To ensure enforcement of federal law . . . the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004).

**C. Eighth Amendment**

"[A] prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth" in Farmer v. Brennan, 511 U.S. 825 (1994). Id.

Under the first prong, plaintiffs must show that the alleged deprivation was "objectively, sufficiently serious.'" Farmer, 511 U.S. at 834. "To be 'sufficiently serious,' the deprivation must be 'extreme'—meaning that it poses a 'serious or significant physical or

8

emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions.'" Scinto, 841 F.3d at 225 (quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)). In medical needs cases, plaintiffs must "demonstrate officials' deliberate indifference to a 'serious' medical need that has either 'been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).

Under the second "subjective" prong, "plaintiffs must show that prison officials acted with a 'sufficiently culpable state of mind.'" Id. (quoting Farmer, 511 U.S. at 834). "In conditions of confinement cases, the requisite state of mind is deliberate indifference." Id. Plaintiffs must show that "the official knew of and disregarded an excessive risk to inmate health or safety," or, in other words, "that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and . . . drew that inference." Id. Deliberate indifference "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Id. (quoting Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)).

Plaintiffs "can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)). "Similarly, a prison official's failure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." Id. "However, even officials

9

who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" Id. (quoting Farmer, 511 U.S. at 844).

Under the first prong of the Farmer test, an inmate's objectively determined, serious medical condition may be established by a condition "that has either been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goodman v. Runion, 676 F. App'x 156, 159 (4th Cir. 2017). Arthritis, degenerative disc disease, and chronic pain in the back and leg "raise a plausible claim that [plaintiff] had a serious medical condition." Adams v. Southwest Regional Jail Authority, 524 F. App'x 899, *2 (4th Cir. 2013). In this case, Sublett's medical conditions – arthritis, disc bulging and space narrowing, and chronic back and leg pain – are diagnosed and nearly identical to those in Adams. Thus, the court finds that Sublett has a serious medical condition.

Turning to the second prong of the Farmer test, the court finds that Sublett cannot show that Drs. Smith or Mullins knew of and disregarded an excessive risk to his health and safety. Assuming Dr. Smith knew that Sublett has disc space narrowing in his spine but chose to treat his pain with medication rather than surgery, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Sublett has not alleged any exceptional circumstances and his allegation that his medical care was inadequate would at most state a claim of medical negligence. Id. Doctors are not liable under § 1983 for negligent diagnosis or treatment. Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998). "A complaint that a physician has been negligent in diagnosing or treating a medical

condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. Further assuming that Dr. Smith told Sublett that the CT scan showed "signs of arthritis" when it also showed a bulging disc and spinal stenosis, failure to disclose the findings of the CT scan does not state a claim for deliberate indifference because it does not involve the unnecessary and wanton infliction of pain. Scinto, 841 F.3d at 225.

Regarding Sublett's allegation that Dr. Mullins attempted to hide the severity of his medical condition by not disclosing the entirety of the CT scan report when requesting the MRI, the CT report contained the following findings:

> Lumbar vertebral bodies are normal in height and alignment. There is no acute fracture or subluxation. No significant disc space narrowing is noted at any level. There is a small to moderate bilateral neural foraminal stenosis at L4-5 and L5-S1 levels from bulging annulus. Paraspinal soft tissues are unremarkable.

ECF No. 1-3 at 9 (emphasis added). When Dr. Mullins requested the MRI, he stated that Sublett had a history of bulging disc and back pain; lower back pain for the past two years without leg numbness or weakness; "sacralization L6 on right," mild disc space narrowing at L5, a normal range of motion and a normal gait. Id. at 10 (emphasis added). Thus, Sublett's allegation that Dr. Mullins attempted to hide the severity of the CT scan report is not supported by the record, because he stated that Sublett has a history of a bulging disc and mild disc space narrowing, both of which are consistent with the CT scan findings.

The denial of the MRI was based on the fact that Sublett had good range of motion, no neurologic signs or symptoms, and a normal gait. It was recommended that Sublett be instructed in range of motion exercises for his back and prescribed Voltaren as an alternative pain medication. ECF No. 1-2 at 10. The decision to deny the MRI amounts to no more than

a disagreement about the necessity of an MRI[5] and decisions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).

> [The] question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .

Estelle, 429 U.S. at 107. Nor do inmate preferences in treatment enjoy constitutional protection. See Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) (finding "the essential test" for constitutionally required health treatment "is one of medical necessity and not simply that which may be considered merely desirable"). See also Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013) (noting that deliberate indifference standard is not satisfied by showing negligence or disagreement concerning questions of medical judgment).

Sublett also argues that Drs. Mullins and Smith were deliberately indifferent to his serious medical needs when they failed to recommend surgery and prescribed medication that did nothing to relieve his pain. However, during the relevant time period, Sublett received continuous treatment including pain relievers and muscle relaxers, a muscle rub, and a cortisone injection. ECF No. 29. The record indicates the doctors relied on their medical expertise to determine the best course of treatment for Sublett. His objections to his physicians' choice or dosage of medications and failure to recommend corrective surgical procedures only represent his preferences, and at most, these preferences amount to "mere

---

[5] Procedures that can help confirm the diagnosis of foraminal stenosis include X-rays, MRIs, CT scans, myelograms, and bone scans. https://www.cedars-sinai.edu/Patients/Health-Conditions/Foraminal-Stenosis.aspx (last viewed on July 6, 2020).

disagreements" with the physicians, not constitutional claims. Scinto, 841 F.3d at 225. Under these circumstances, the conduct of the physicians as alleged by Sublett falls short of deliberate indifference. Estelle, 429 U.S. at 106.

Finally, Sublett alleges that Dr. Mullins ordered a follow-up X-ray that showed no anomaly, in an attempt to cover up earlier evidence of a serious medical condition. However, the X-ray was interpreted by Derek Urban, M.D., rather than Dr. Mullins, and the report states that there was normal alignment without fracture, vertebral body heights were preserved, disc spaces and posterior elements were normal, the sacrum and SI joints appeared normal, and the visualized paraspinal soft tissues were unremarkable. ECF No. 1-3 at 11. Sublett's allegation that the X-ray was part of a cover-up is conclusory and unsupported by the record. In addition, if the report accompanying the X-ray contained mistaken conclusions, the improper reading of an X-ray does not rise to the level of deliberate indifference to a serious medical need. King v. United States, 536 F. App'x 358, 361 (4th Cir. 2013).

The court finds that Sublett has failed to state a claim of deliberate indifference to serious medical need against either Dr. Smith or Dr. Mullins because none of their actions was extreme or posed a serious or significant physical or emotional injury or a substantial risk of serious harm resulting from the challenged condition. Scinto, 841 F.3d at 225. Therefore, summary judgment is entered for Drs. Smith and Mullins on Sublett's claims against them.

### D. Motion to Dismiss

Defendants Townsend, Mannis, and Amonette move for dismissal of Sublett's claims against them. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, "'state a

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When ruling on a motion to dismiss, the court accepts "the well-pled allegations of the complaint as true" and "construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court need not accept as true "'legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement, . . . unwarranted inferences, unreasonable conclusions, or arguments.'" Richardson v. Shapiro, 751 F. App'x 346, 348 (4th Cir. 2018) (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)) (internal quotation marks omitted). Thus, a complaint must present sufficient nonconclusory factual allegations to support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196-197 (4th Cir. 2009) (affirming dismissal of claim that simply stated a legal conclusion with no facts supporting the allegation) and King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare

legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim.") (quoting Iqbal, 556 U.S. at 679).

On January 15, 2019, Sublett filed an informal complaint stating that he had suffered from back pain for two years and although Dr. Ali Rao had recommended an MRI if his symptoms persisted or worsened, his request for an MRI had been denied. Defendant Townsend responded to the complaint on January 24, 2019, advising Sublett that he would be placed on the "doctor's list" for review of the X-ray that was done on January 17, 2019.

On January 29, 2019, Sublett submitted a formal grievance, asserting that he needed an MRI and that an X-ray review was not the proper method to fully diagnose the issue of his back pain. He complained that his condition was worsening, affected his daily activities, including walking and exercise, and had the potential to result in paralysis. He stated that the MRI was needed to assess the severity of his back issues. On February 20, 2019, defendant Mannis responded that according to Townsend, Sublett was seen on February 4, 2019 by the facility physician who determined his plan of care and that his plan of care was reviewed with him at that time.

Sublett alleges that Townsend was deliberately indifferent to his serious medical needs when she failed to properly address the issues he raised in his grievances. He avers that Townsend had complete access to his medical records and that her response resulted in the denial of medical care. Sublett also argues that Mannis was deliberately indifferent to his serious medical needs when he relied on Townsend's "incomplete investigation" to deny Sublett's grievance complaining that his MRI request was denied.

To make out a claim of deliberate indifference against these defendants, Sublett must show that they knew of and disregarded an excessive risk to his health and safety. Farmer, 511 U.S. at 834. Generally, administrators are permitted to rely upon the recommendations of state physicians when making decisions related to the health of inmates. Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990); Lewis v. Angelone, 926 F.Supp. 69, 73 (W.D. Va. 1996). Because Townsend and Mannis are non-treating officials, Sublett must show that they either (1) failed promptly to provide him with needed medical care; (2) deliberately interfered with his doctors' performance; or (3) tacitly authorized or were indifferent to his doctors' constitutional violations. Miltier, 896 F.2d at 854.

At the time he filed the grievances, Sublett had already met with physicians nearly twenty times and been prescribed various pain medications throughout the previous three years. When Townsend received Sublett's grievance, she promptly placed him on the "doctor's list" for medical attention and Sublett was seen by Dr. Mullins approximately one week later. Mannis also addressed Sublett's appeal within the required time frame and based his denial of the grievance on the medical assessment generated by Sublett's most recent medical appointment.

Sublett's allegations, construed in the light most favorable to him, do not establish that these administrators failed to offer him access to necessary medical care or deliberately interfered with the physicians' treatment recommendations. Likewise, as discussed above, the physicians did not commit any constitutional violations, meaning Sublett cannot show that the administrative defendants tacitly authorized or were indifferent to his doctors' constitutional

16

violations. Id. See also George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.")

Finally, to the extent Sublett is arguing that Townsend or Mannis are liable in their roles as supervisors, they do not have the requisite personal involvement for a § 1983 constitutional claim to stand against them. An independent theory of supervisory liability under § 1983 may be established if a plaintiff shows the following:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations and quotations omitted). Sublett's claims do not establish supervisory liability because there is no evidence in his case that a subordinate engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Sublett.

For all of these reasons, Sublett's causes of action against Townsend and Mannis are **DISMISSED**.

### E. Request for Injunctive Relief

Sublett asks the court to issue an injunction ordering Dr. Amonette or his agents to arrange for Sublett to have an MRI, corrective surgery, and follow-up treatment by a medical practitioner with expertise in the treatment of lower back issues. However, "[i]t is well-established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that

17

of the trained penological authorities charged with the administration of such facilities." Taylor v. Freeman, 34 F.3d 266, 268 (4th Cir. 1994). A mandatory injunction is warranted in only the most extraordinary circumstances and should not be issued unless the facts and law clearly favor the moving party. Id. at 270 n. 2.

Although Sublett believes that he needs an MRI to determine whether he is a candidate for surgery to relieve his back pain, he has submitted no evidence showing that he will suffer irreparable harm without the test or the surgery. See Zuniga v. University Health System, 71 F. App'x 293, 293-294 (5th Cir. 2003) (per curiam) (affirming denial of preliminary injunction where inmate submitted no medical opinion showing that he would suffer irreparable harm if he were not given orthopedic shoes). Under these circumstances, the court declines to order Dr. Amonette or any other defendant to take a particular action with regard to the treatment of Sublett's back ailment. See Bowring, 551 F.2d at 47-48 ("The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."); Lewis v. North Carolina Department of Public Safety, No. 1:15-cv-284-FDW, 2018 WL 310142, *6 (W.D.N.C. 2018) (noting that a plaintiff is not entitled to a particular course of medical treatment or the treatment of his choice.)

As discussed above, the cause of Sublett's back pain has been diagnosed with X-rays and a CT scan, and he has been prescribed medication and other modalities for pain relief. Although the court is sympathetic to the pain Sublett experiences, he has not overcome the heavy burden of establishing that injunctive relief in the form of a particular test or treatment is warranted. Accordingly, his request for injunctive relief is **DENIED**.

**F. Conclusion**

Based on the foregoing, the court **GRANTS** defendants Drs. Smith and Mullin's motion for summary judgment, ECF No. 31, and **GRANTS** defendants Townsend, Mannis, and Dr. Amonette's motion to dismiss, ECF No. 37. Sublett's complaint is **DISMISSED** in its entirety.

An appropriate order will be entered.

Entered: July 7, 2020

Mike Urbanski
cn=Mike Urbanski, o=US Courts,
ou=Western District of Virginia,
email=mikeu@vawd.uscourts.gov, c=US
2020.07.07 17:12:22 -04'00'

Michael F. Urbanski
Chief United States District Judge